# UNITED STATES DISTRICT COURT
for the
### EASTERN DISTRICT OF WISCONSIN

*In the Matter of the Search of*

**Case Number:** ‖‑M‑258

**2355 N. 15th Street, Milwaukee, WI**; more specifically described as as a two story, single family home with light gray siding, white trim, black shutters, and a dark gray roof. The house is situated on the west side of N. 15th Street. The numbers "2355" are black in color and affixed vertically to the left side of the front door. The entry door to 2355 N. 15th Street is black and faces east. The windows on the first level of the residence have vertical black bars attached to them. The foundation to the residence is painted white.

## APPLICATION & AFFIDAVIT FOR SEARCH WARRANT

I, Jill Ceren, a federal law enforcement officer, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property:

**2355 N. 15th Street, Milwaukee, WI**; more specifically described as as a two story, single family home with light gray siding, white trim, black shutters, and a dark gray roof. The house is situated on the west side of N. 15th Street. The numbers "2355" are black in color and affixed vertically to the left side of the front door. The entry door to 2355 N. 15th Street is black and faces east. The windows on the first level of the residence have vertical black bars attached to them. The foundation to the residence is painted white.

located in the Eastern District of Wisconsin there is now concealed: **Please see attached affidavit, which is hereby incorporated by reference.**

The basis for the search warrant under Fed. R. Crim. P. 41(c) is which is (check one or more):

✓ evidence of a crime;
✓ contraband, fruits of a crime, or other items illegally possessed;
✓ property designed for use, intended for use, or used in committing a crime;
❏ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

Title 21, United States Code, Sections 841(a)(1) and 846.

The application is based on these facts:

✓ Continued on the attached sheet, which is incorporated by reference.
❏ Delayed notice of _____ days (give exact ending date if more than 30 days:_____) is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*
Name and Title: Jill Ceren
DEA Special agent

Sworn to before me, and signed in my presence.

Date _August 3_, 2011

City and state: Milwaukee, Wisconsin

*Judge's signature*
THE HONORABLE PATRICIA J. GORENCE
United States Magistrate Judge
*Name & Title of Judicial Officer*

# AFFIDAVIT IN SUPPORT OF A CRIMINAL COMPLAINT AND SEARCH WARRANTS

I, Jill Ceren, having been duly sworn on oath, state as follows:

## I.    TRAINING AND EXPERIENCE

1.     I am a Special Agent with the Drug Enforcement Administration, and have been since 1990.  I have specialized training and experience in narcotics smuggling and distribution investigations.  During my tenure with the DEA, I have participated in over 100 narcotics investigations, and have authored over 100 affidavits supporting wire and electronic intercepts, criminal complaints, search and seizure warrants.  I have debriefed more than 100 defendants, informants, and witnesses who had personal knowledge regarding major narcotics trafficking organizations.  I am familiar with narcotics traffickers' methods of operation including the distribution, storage, importation, and transportation of narcotics, the collection of money which represents the proceeds of narcotics trafficking, and money laundering.  Further, I have received training in the use of internet, electronic, and wire methods of operation of drug traffickers.

2.     I have participated in numerous investigations involving violations of federal, state, and local drug trafficking laws.  I have had both formal training in and participated in numerous complex investigations including many investigations which utilized traditional law enforcement methods, including, but not limited to, interviews with citizen witnesses, interviews with confidential informants and sources, interviews with cooperating defendants, the gathering and analysis of information from various law enforcement agencies, the gathering and analysis of documentary evidence, consensually recorded conversations between confidential informants and targets of investigations, the analysis of pen register, trap and trace, and telephone toll data, collection of public source information, physical surveillance, GPS surveillance, search and seizure warrants, and court-authorized monitoring of wire and electronic communications.

1

3. I am an investigative or law enforcement officer of the United States within the meaning of Title 18 United States Code, Section 2510(7), in that I am empowered by law to conduct investigations of and to make arrests for federal felony offenses.

## II.    SUBJECT CRIMINAL COMPLAINT AND LOCATIONS TO BE SEARCHED

4. This affidavit is submitted in support of a criminal complaint charging Deandre O. HARSCH (M/B, DOB: 6-9-78) with a violation of Title 21 United States Code, Sections 841(a)(1) (possession with the intent to distribute controlled substances) and 846 (conspiracy), and for applications for search warrants to seek evidence of violations Title 21 United States Code, Sections 841(a)(1) (possession with the intent to distribute controlled substances) and 846 (conspiracy) at the below locations associated with Deandre O. HARSCH and others, who have committed, are committing, and will continue to commit the above offenses:

a. **Unit A33, Green Acres Mini Warehousing, a.k.a. Green Acres Self Storage, W196 N7580 Becker Road, Lannon, WI**; and

b. **2355 N. 15th Street, Milwaukee, WI** - more specifically described as a two story, single family home with light gray siding, white trim, black shutters, and a dark gray roof. The house is situated on the west side of N. 15th Street. The numbers "2355" are black in color and affixed vertically to the left side of the front door. The entry door to 2355 N. 15th Street is black and faces east. The windows on the first level of the residence have vertical black bars attached to them. The foundation to the residence is painted white.

## III.    SOURCES OF INFORMATION

5. I have obtained the facts set forth in this affidavit through my personal participation in the investigation described below; from my review of text and call records, from oral and written reports of other law enforcement officers participating in this and related investigations, and from records, documents and other evidence obtained during this investigation. Since this affidavit is being submitted for the limited purpose of obtaining search warrants for the above described premises, I have not included every fact known concerning this

2

investigation. I have set forth only the facts I believe are essential to establish the necessary foundation for the requested criminal complaint and orders authorizing the search warrants for the above described premises.

## IV. PROBABLE CAUSE

6. On February 16, 2011, at approximately 1500 hours (PST), Los Angeles Police Department (LAPD) Detective Steve Winters was conducting surveillance on The UPS Store, located at 4859 West Slauson Avenue in Los Angeles, CA. Based upon prior investigations, this store is known to investigators as a common place for shipping narcotics and is generally not cooperative with law enforcement.

7. At approximately 1630 hours, Detective Winters' partners, LAPD Detectives Beshai and Rodriguez, both observed a silver, 4-door, 2004 Chrysler Pacifica hatchback bearing California license #6LXD184 entering the parking lot of The UPS Store. A male, later identified as Aaron Jackson, (M/B, DOB: 11/13/75), was in the driver's seat and a female, later identified as Takisha Johnson, (F/B, DOB: 5/22/78), was in the passenger's seat. The vehicle was later determined to be registered to Takisha Johnson, 647 West Century Boulevard, Los Angeles, CA.

8. Detectives Beshai and Rodriguez observed Jackson drive into the parking lot and park in front of The UPS Store. Jackson opened the rear hatchback and retrieved a newer looking box that was heavily taped at the seams and appeared to be heavy. Jackson went into the UPS Store, as Johnson stayed seated in the passenger seat of the vehicle. Rodriguez, with assistance of binoculars, had a clear view of inside the store. Rodriguez observed Jackson put the package on his shoulder and walk to the front counter, interact with the employee, and ship the box. Jackson left the store and entered the driver's side of his vehicle. Detectives Beshai, Rodriguez, and Winters saw Jackson pull out of the parking lot and turn south onto Fairfax.

3

Case 2:11-mj-00258-PJG    Filed 08/22/11    Page 4 of 23    Document 1

Winters went into the store and examined the box that was in Jackson's possession for criminal indicators while Detectives Rodriguez and Beshai conducted surveillance on Jackson. Winters noticed the following information on the parcel: a return address of Joe Willis, 310-221-7324, 9032 Ramsgate Place, Los Angeles, CA 90045; a shipping address to 414-306-0413, Oni Brown, Apt. 19, 1527 N. Marshall St., Milwaukee, WI 53202-2049. The parcel was assigned tracking #1Z 866 R5V NY 5800 7028 and was being shipped to Wisconsin, which is known for receiving shipments of narcotics from the Los Angeles area. Detective Winters also determined that the parcel was being shipped "second day air," which is a common method for narcotics shippers because it allows for quick delivery and therefore, minimum detection by law enforcement. In addition, as noted above, Detective Winters observed that the box was heavily taped at the seams. This allows for narcotics shippers to mask the scent of narcotics in an attempt to avoid detection of the odor from law enforcement K-9s.

9.      Detectives Rodriguez and Beshai followed Jackson south on Fairfax to La Brea and eventually west on Century Boulevard. Jackson drove to the Michael's Arts and Crafts Store located at 3340 West Century Boulevard in Inglewood, CA. Jackson and Johnson parked in the parking lot and walked inside the store. Jackson exited the store and sat in the vehicle and a short time later, Johnson returned to the vehicle. Jackson drove west on Century Boulevard to the 99 Cent Store, located at 3220 West Century Boulevard. Johnson exited the vehicle and walked into the store. A short time later, she returned to the vehicle and Jackson drove west on Century Boulevard. Winters observed the silver 2004 Chrysler Pacifica make numerous traffic violations. Winters contacted the Inglewood Police Department to conduct a traffic stop. The occupants were positively identified as Aaron Jackson (M/B, DOB: 11/13/75) in the driver's seat and Takisha Johnson (F/B, DOB: 5/22/78) in the passenger's seat. Subpoenaed telephone records

4

determined that the telephone number listed on the return address of the parcel, 310-221-7324, was bogus. Using public sources, Detective Winters located a Facebook page for Takisha Johnson. The photograph of Takisha Johnson on the Facebook page matched Takisha Johnson's California driver's license photograph. The Facebook page listed Johnson's telephone number as 323-370-5750.

10. Subpoenaed telephone records for subscriber information and tolls for 323-370-5750 revealed the number lists to Takisha Johnson and that activity on the number began on or about March 9, 2010, and was still in use through the end of April 2011.

11. On February 17, 2011, Milwaukee Police Department (MPD) Detective Eugene Nagler spoke to LAPD Detective Winters about the above referenced suspicious package sent from Los Angeles to Milwaukee, Aaron Jackson, and Takisha Johnson. On February 18, 2011, Detective Nagler (who works with a drug detection canine) obtained a state search warrant to open a parcel being sent from Los Angeles, CA, to Oni Brown, 1527 N. Marshall St, Apartment 19, Milwaukee, WI. Inspection of the parcel in Milwaukee, Det. Nagler observed the parcel as a brown cardboard box, measuring approximately 18"x18"x12," bearing Air Bill #1Z866R5VNY58007028. The parcel was sent from Joe Willis, 310-221-7324, 9032 Ramsgate Pl., Los Angeles CA 90045, to 414-306-0413, Oni Brown, 1527 N. Marshall St., Apt. 19, Milwaukee WI. 53202. Upon opening the parcel pursuant to the search warrant, Det. Nagler discovered the parcel contained 6,000 grams of suspected cocaine (weight with container). The cocaine was in five (5) "brick" shaped blocks, wrapped in numerous layers of plastic wrap and plastic. Det. Nagler field tested the suspected cocaine and received positive results for the presence of cocaine. The five kilograms of suspected cocaine were contained within a Fender

5

amplifier. The amplifier was in a plastic wrapper inside the original box. The box was placed inside the brown cardboard box for shipping.

12. The parcel was subsequently delivered on the afternoon of February 18, 2011, to the Marshall Street apartment building. Upon delivery, a black female, subsequently identified as Redesya Brown, picked up the box from the entryway of the building. Brown was detained and questioned by police in Apartment 19 of the building. Det. Nagler spoke to Brown in the apartment and recorded the interview. Brown gave written and verbal consent to search her apartment and auto. Brown also gave written and verbal consent to download information from her cellular telephones.

13. During the consent search of Apartment 19, case agents located several items that were subsequently inventoried and placed in evidence, including the following items: a glass Pyrex measuring bowl with white powder residue in it; two partial boxes of sandwich baggies; a small scissors; a black cloth bag with the strong odor of cocaine on it; a partial roll of aluminum foil; an ammonia bottle, a blue vice (kilogram press), pliers, screwdriver, chisel, a respirator, and black bag. Based on my training and experience, and the investigation to date, I believe all of the above seized items are indicative of cocaine distribution in that they are all commonly used by drug traffickers to break down larger quantities of cocaine into smaller distribution amounts and to add weight to the cocaine to expand profits. Amongst the various documents seized, case agents located a UPS Drop-Off Package Receipt dated Friday December 17, 2010 at 4:20 p.m. for a package weighing 1.260 lbs. a tracking number 1ZT59Y330293927117. In addition to the seizure of the above items, case agents noted the apartment was barren of clothes, food, and household items that would normally indicate occupation as a resident.

6

14.     Brown stated the apartment (1527 N. Marshall St., #19.) is listed in her name and she had rented the apartment on a month to month basis for the last year. Brown stated she pays the rent with a money order and usually get the money from "D Thomas." Brown described Thomas as a B/M, 25-35 yoa, 5'08" - 5'11," 170-190 lbs. Brown admitted she was being paid $900-1,000 to get the box for "D Thomas." Brown stated she was sending and receiving text messages to and from Thomas' cell phone, 414-519-9422. Brown stated Thomas had given her a cell phone specifically to communicate with him regarding this specific parcel, a silver Sanyo with telephone number 262-716-4132. Brown stated she was instructed to contact Thomas via text message at 414-519-9422. Brown stated Thomas gave her the cell phone to use, on Wednesday (02-16-2011). Brown stated Thomas also called and texted her from his other cell number, 414-369-0430. Brown stated she believed Thomas was in L.A. for the NBA All Star game. Brown stated she was paid $1,000 for getting a prior box containing narcotics for Thomas, at her apartment several months ago. Brown stated once the box arrived on this occasion, she was supposed to leave the box and silver Sanyo cell phone in the apartment and leave. Brown stated Thomas has his own set of keys to the apartment and would come and deal with the box on his own. Brown gave consent for the search of her vehicle parked outside the Marshall Street apartment building, a silver new model Impala.

15.     Brown agreed to cooperate with law enforcement, and under the direction and control of Det. Nagler, she sent a text to Thomas at 414-519-9422 using her silver Sanyo cell phone, 262-716-4132, at approximately 4:30 pm, indicating "touchdown," meaning she had received the box containing the 5 kilograms of suspected cocaine. Brown received a text from "D Thomas" from 414-519-9422 at approximately 4:53 p.m., stating "Feels good 2 b able 2 move

7

around huh?" Brown texted "D Thomas" back at 414-519-9422 "Yes." Brown stated she had waited all day for the parcel and that is what she thought "D Thomas" was referring to in his text.

16. Case agents also talked to Brown about a series of text messages on the silver Sanyo referencing "Count?" "127240 plus" and "101000 is ready". Brown acknowledged she read the text messages but she was not sure what they meant. Brown stated she thought it was about money, but it was nothing to do with her.

17. Subsequent investigation revealed the following subscriber information: telephone number 414-369-0430 was activated January 13, 2011, with the name Deandre O. HARSCH, DOB: 6-9-78, at address 2355 N. 15th Street, Milwaukee, WI; telephone number 414-519-9422 is a U.S. Cellular prepaid account activated on February 5, 2011; and telephone number 262-716-4132 is a boost phone activated on September 6, 2010. A picture retrieved from another of Redesya Brown's cellular telephones showed HARSCH holding a large sum of U.S. currency.

18. UPS records indicate two other boxes were delivered to the Marshall Street apartment, one on October 9, 2010, and one on July 15, 2010. Both of these boxes came from the same UPS store in Los Angeles that was used in February 2011 to send the five kilograms of cocaine to Marshall Street. Brown told investigating agents that she received the October 9th box, but not the July 15th box. Brown remembered that she did not sign for the October 9th box or the February 18th box, and UPS records show no signature for those boxes. The July 15, 2010, box shows a signature of "Brown" by the person receiving the box. Travel records obtained to date show multiple short-duration trips by HARSCH between Milwaukee and Los Angeles in 2009, 2010, and 2011. The records reveal HARSCH was accompanied by Brown on a one-way trip which occurred June 27, 2010, from Milwaukee to Los Angeles. Marcus Cargile

8

accompanied HARSCH on four occasions in 2009 and 10 occasions in 2010 (all round trips), Dalisha Walker accompanied HARSCH on four occasions in 2010 and 2011 (two trips were one-way from Los Angeles to Milwaukee), and Tiffany Johnson accompanied HARSCH from February 17-23, 2011. HARSCH made a one-way trip from Milwaukee to Los Vegas on January 28, 2011, and HARSCH and Walker made a round trip to Las Vegas from Milwaukee from December 24-27, 2010. Car rental and internet travel service records further reveal that HARSCH rented vehicles and booked hotels on dates/times corresponding to the air travel records referenced above. The records reveal that HARSCH often left **414-369-0430** as his contact number.

19. On May 12, 2011, case agents conducted a proffer interview of Redesya Brown with her attorney. Brown again positively identified "D Thomas" or "D", by color photograph as Deandre O'Brien HARSCH (B/M, DOB: 6/9/78). Brown stated she also knows HARSCH to use the nicknames "SCO" or "BOSCO." Brown stated HARSCH has been out of prison for about two years, and has engaged in selling cocaine for this period. Brown estimated HARSCH started selling cocaine around the end of 2009, after enrolling in school but dropping out. HARSCH lived in an upper apartment at N. 84th St. and W. North Avenue (Wauwatosa, WI) after leaving prison. Brown put this apartment in her name. Brown stated HARSCH has had no legitimate means of employment since getting out of prison. Brown stated that she learned that HARSCH was selling cocaine in late 2009 because HARSCH told her that he had one or two kilograms of cocaine available at that time. HARSCH asked Brown to find customers for the cocaine.

20. One customer that Brown found for HARSCH was Lawrence "LO" Minor (identified in a photograph). Brown provided ½ kilogram quantities to Minor on about three occasions in the fall of 2010. Brown stated HARSCH and Minor were acquainted in prison, and

9

met once at Ralph's Coffee Shop on Lisbon Avenue in Milwaukee prior to Brown middling transactions between them. Brown was fronted the cocaine by HARSCH to deliver to Minor, and returned with Minor's money around 15 minutes later to complete the transactions. Brown verified Minor's money ($18,000) on each occasion and then paid HARSCH $17,000 when she met with him later. Brown picked up the cocaine from HARSCH at their Marshall St. apartment and on the street. HARSCH drove a white Yukon to these deals, but might be currently driving a black Tahoe or Yukon. HARSCH also has a purple and green "old school" car.

21. Brown identified another of her customers as "Nut," who lives in the area of N. 6th and Becher Streets in Milwaukee. Nut purchased 4 ½ ounce quantities from Brown on several occasions in 2010, all of which Brown obtained from HARSCH. Nut paid Brown $4,500 for each split (4 ½ ounces) and Brown paid HARSCH $4,000. Brown described Nut as a black male, 26-27, 5-10 to 6-0, stocky, muscular, lifts weights, wears braids. Nut drives a 92-93 white Olds sedan and fronted the money for the cocaine purchases to Brown.

22. Brown stated when she purchased cocaine from HARSCH, HARSCH was responsible for weighing and bagging the cocaine. Brown stated HARSCH was the person that was expecting the box of cocaine seized by the police at Brown's Marshall Street (Apartment 19) in February 2011. HARSCH had previously paid Brown for receiving another box at this apartment in the fall of 2010. Brown stated she had received the boxes for HARSCH as HARSCH was out of town when each box arrived. Brown stated both boxes she received were delivered by UPS.

23. Brown stated she has registered multiple vehicles for HARSCH, including one being driven by HARSCH's girlfriend, Dalisha WALKER (identified in a photograph). WALKER's vehicle is a 2002 silver BMW X5 which Brown registered in 2009. WALKER has

been HARSCH's girlfriend for two years, according to Brown, and works at Wal-Mart. Brown also registered a 95 Yukon, a GMC Envoy, and a 2004 Grand Prix.

24. Several criminal associates of HARSCH's known to Brown include Marcus Cargile (identified in a photograph), Mike Yarbrough (cousin of HARSCH), and Big Ant (recently deceased). According to Brown, Cargile flew with HARSCH to Los Angeles between five and ten times. Brown saw Cargile in May 2011 driving HARSCH in Cargile's red newer model Charger. Brown stated she learned from Reginald Brown that despite the seizure by the police in February 2011, HARSCH is still selling cocaine. According to Brown, Cargile sells small amounts of cocaine for HARSCH.

25. Brown stated HARSCH's cocaine source of supply is in California, but has never met the person. Brown stated HARSCH flew to California to meet the source, and did not drive out to meet him. Brown stated she flew with HARSCH to Los Angeles on one occasion in 2010, staying for two days. HARSCH rented a Navigator and picked up all the expenses of the hotel and entertainment while they were in LA. A person they had met while in L.A. was a black/male, bald head, 5'10" - 6'02", with a football player build, and who was dating a model.

26. Brown stated Tiffany Johnson (identified in a photograph) has a child with Mike Yarbrough. Johnson lives on N. 15th Street in Milwaukee. Johnson drives a Jaguar and works at Wells Fargo Bank. Johnson accompanied HARSCH to Los Angeles in February 2011, when the box of cocaine was sent to Brown at the Marshall Street apartment.

27. Brown said she once mailed a box for HARSCH, via UPS, around mid-December 2010. HARSCH told Brown he was sending a gift to a girl in California, and did not want to use his name or address on the package so it would be a surprise. Brown paid the shipping and

11

HARSCH reimbursed Brown later. Brown estimated the box was about 12"x6"x6." HARSCH drove Brown in the white Yukon to the UPS facility on Rawson Avenue to send the package.

28. Brown said HARSCH has used a T-Mobile number 414-369-0430 for some time, but also uses prepaid phones to conduct drug transactions, including using text messaging. Brown said HARSCH uses Facebook as well, possibly with the name "Bosco Thomas."

29. Brown stated her father, Reginald Brown (M/B, DOB: 1/23/56, phone number 414-419-1652), is a user of cocaine, and might purchase cocaine from HARSCH as they frequent the same neighborhood on N. 15th Street. Reginald Brown has used this number for many years, according to Brown. Brown stated her father, Reginald Brown, told HARSCH the police seized the box in February from Brown at the Marshall Street apartment.

30. On June 9, 2011, Lawrence Minor provided information to case agents regarding Redesya Brown and others pursuant to a proffer agreement. Minor stated he was imprisoned on a drug charge from 2003 through January 2010. After being released, Minor heard on the streets that Redesya Brown (identified in a photograph) was doing well and able to supply cocaine. Minor stated he has known Brown for many years, as they both lived in the neighborhood of N. 44th and Center Streets in Milwaukee. Between January and September 2010, Minor had been selling 1/4 ounce quantities of cocaine. Around September 2010, Minor started associating with Willie Reaves, who was a fugitive from the police. Reaves, however, had access to money, and had a customer base for cocaine. Reaves agreed to finance purchases of cocaine, if Minor could find a supplier. Minor approached Redesya Brown around this time. After meeting up with Brown, she told him she could provide him cocaine and asked him to look for customers on her behalf. Brown, Minor, and Deandre HARSCH (identified in a photograph) met subsequent to Minor's initial meeting with Brown. HARSCH, who Minor knows as "Bosco," told Minor he

Case 2:11-mj-00258-PJG    Filed 08/22/11    Page 13 of 23    Document 1

(HARSCH) had recently come home from prison. Minor stated he did not know if HARSCH was Brown's cocaine supplier at the time.

31. Minor, using Reaves' money, began purchasing ½ kilogram quantities of cocaine from Brown. These purchases occurred on 3-4 occasions between September 2010 and January 2, 2011, when Minor and WR were arrested. Minor stated in addition to the ½ kilogram purchases, he purchased 4 ½ and 9 ounce quantities from Brown, usually once a month. Minor stated that he had just purchased nine ounces from Brown prior to his January arrest, and that the two 4 ½ ounce quantities of cocaine found at the house he was arrested at were from her. Minor stated the 9 ounces of cocaine from Brown was in two chunks in two plastic baggies. Minor stated the cocaine in Reaves' shoe (107 grams) and the cocaine found in the kitchen (120 grams) also came from Brown. Minor stated the cocaine was purchased with Reaves' money. Minor stated the pricing for the 4 ½ ounce quantities varied, depending if Brown had cocaine available or not. Brown charged between $4,000 and $4,500 per 4 ½ ounces. The half kilograms were priced normally at $4,250 per split, making the purchase price for a ½ kilogram at $17,000. On one occasion, Minor only paid $16,000 to Brown for a ½ kilogram. Brown normally delivered the cocaine at MINOR's residence, 4112 A N. 14th Street, Milwaukee, WI and drove a silver, newer model Impala when she delivered the cocaine. Minor stated Brown sometimes indicated that the price would increase if she had to go somewhere else for the cocaine (meaning she did not have it readily available). Minor stated he believed that Brown had an out of town source for cocaine because of statements Brown made to him, including, "We sent the money off," and "It might be a week" (to get more cocaine). Brown often informed Minor about the quantity of cocaine she had available. For example, on one occasion, Brown told Minor, "I'm down to a half; do you want to come for it?" Minor said this indicated that Brown had a ½ kilogram

13

available for sale. Brown also said, "This is what's left, so come now," indicating that she was running low on cocaine. Minor stated sometimes he would have to wait a week or two for more cocaine from Brown after she ran out. When Brown had a new cocaine supply, she told Minor, "I'm good for the next month," or for the next three weeks. Minor stated it was easiest to get a ½ kilogram from Brown when she had just received a fresh supply of cocaine.

32. Minor stated he carried two phones when dealing with Brown, a black LG, and a US Cellular touch phone. Brown changed her number several times over the period that Minor bought cocaine from her. Her number is stored in his phones under the contact "Rdsha."

33. A check of one of Minor's phones showed the contact Rdeesha with the number 262-716-2906 listed in the phone. This number is subscribed to AAA AAA, PO Box 54988, Irvine, CA. The silver Sanyo phone (number 262-716-4132) used by Brown to text HARSCH when the box of cocaine arrived in Milwaukee is also subscribed to AAA AAA, PO Box 54988, Irvine, CA.

34. Subscriber information for 414-519-9422 shows that the phone service was established as a prepaid account under the name Sam Doe with address 4241 W. Capitol Drive, Milwaukee, WI on February 5, 2011. Subscriber information for 414-369-0430 shows that the phone service was established under the name Deandre HARSCH, 2355 N. 15th Street, Milwaukee, WI on January 13, 2011.

35. Subsequent lab analysis of the cocaine inside the box delivered to Redesya Brown shows that the parcel contained 4,979 grams of cocaine, a Schedule I controlled substance.

36. Brown indicated that she was receiving the box for HARSCH while he was in Los Angeles. A check of travel records of HARSCH show that he has over two dozen trips between Milwaukee, WI, and Los Angeles, CA from September 2009 through June 2011.

14

37.     The information provided by Redesya Brown has been corroborated by other confidential sources, surveillance, telephone toll records, and public records. For these reasons, I consider Brown's information to be reliable. Brown has no criminal history. Brown is hoping to receive consideration in connection with potential felony criminal charges which could be filed by the United States Attorney's Office in the Eastern District of Wisconsin. Brown is represented by counsel and has received a proffer letter the government.

38.     The information provided by Lawrence Minor has been corroborated by other confidential sources, surveillance, consensual recordings, telephone toll records, and public records. For these reasons, I consider Minor's information to be reliable. Minor has a criminal history that includes two felony arrests. Minor is hoping to receive consideration in connection with felony criminal charges which have been returned by a grand jury in the Eastern District of Wisconsin. Minor is represented by counsel and has received a proffer letter the government.

39.     Case agents obtained the following specific information regarding HARSCH's association with 2809 N. 86th Street, Milwaukee, WI:

   a.     A return of subpoena of records from Wisconsin Energies revealed the utilities at 2809 N. 86th Street, Milwaukee, WI have been listed in the name of Deandre HARSCH since 2009.

   b.     On July 27 and 28, 2011, case agents observed a 2007 Chevy Tahoe, bearing WI registration plate 260SLJ, parked directly in front of 2809 N. 86th Street. The vehicle lists to Deandre O. HARSCH at 3456A N. 15th Street, Milwaukee, WI.

   c.     A check of a law enforcement database lists 2809 N. 86th Street as the current residence of Deandre O. HARSCH.

   d.     Current court authorized electronic surveillance puts HARSCH's cell phone in the location of 2809 N. 86th Street since July 15, 2011. Cellular phone records show the last calls at night and the first calls of the next day are all in the area of N. 86th Street.

15

e. A check with United States Postal Service revealed HARSCH currently receives mail at 2809 N. 86th Street, Milwaukee.

40. Case agents obtained the following specific information regarding HARSCH's association with 3456A N. 15th Street, Milwaukee, WI:

   a. The 2007 Chevrolet Tahoe observed at 2809 N. 86th St. lists to Deandre O. HARSCH at 3456A N. 15th Street, Milwaukee.

   b. Subpoenaed bank account and credit card information of HARSCH shows that the statements are sent to HARSCH at 3456A N. 15th Street, Milwaukee.

   c. Subpoenaed travel records show that Deandre O. HARSCH uses 3456A N. 15th Street, Milwaukee, as his mailing address.

   d. Wisconsin state court records list Deandre O. HARSCH at 3456 N. 15th Street & 3456 (A) N. 15th Street, Milwaukee. A check of a law enforcement database lists 3456A N. 15th Street as the current residence of HARSCH.

   e. Property and utility records show that Tiffany Johnson, HARSCH's girlfriend, owns the residence at 3456/3456A N. 15th Street, Milwaukee, and is the current listed subscriber of utilities at 3456A N 15th Street.

   f. Subpoenaed travel records revealed Tiffany Johnson flew with HARSCH to Los Angeles, CA, when the 5 kilograms of cocaine were intercepted in Milwaukee on February 18, 2011.

   g. Toll and pen records from HARSCH's cell phone 414-369-0430 show that the telephone was used to contact phones subscribed to Tiffany Johnson more than 500 times from February through July 2011.

   h. A check with United States Postal Service revealed HARSCH and Johnson currently receive mail at 3456A N. 15th Street, Milwaukee.

41. Police reports and court records indicate the following criminal history for the below-listed individuals:

   a. Deandre O. HARSCH (B/M, DOB: 06/09/1978) – 1995 felony conviction for battery of prisoners, 1996 felony conviction habitual criminality, 1999 misdemeanor conviction operate vehicle without consent, 1999 misdemeanor conviction resisting/obstructing and possession THC, 2002

16

felony conviction PWID cocaine, 2003 misdemeanor conviction resisting/obstructing and felony conviction bail jumping, and 2006 conviction possession of firearm by felon.

b. Redesya Brown (B/F, DOB: 03/26/1981) – no criminal history.

c. Lawrence D. Minor (B/M, DOB: 10/01/1977) – 2003 felony conviction PWID cocaine base.

d. Aaron Jackson (B/M, DOB: 11/13/1975) – no criminal history.

e. Takisha Johnson (B/F, DOB: 05/22/1978) – no criminal history.

f. Marcus Cargile (B/M, DOB: 02/23/1984) – pled guilty to felony PWID cocaine, misdemeanor possession THC.

g. Dalisha Walker (B/F, DOB: 03/12/1988) – no criminal history.

h. Michael Yarbrough (B/M, DOB: 10/12/1978) – 2001 felony conviction PWID cocaine and 2011 felony conviction criminal damage to property.

i. Tiffany Johnson (B/F, DOB: 11/10/1982) – 1999 misdemeanor conviction for false representation and 2002 misdemeanor theft conviction.

42. On August 2, 2011, your affiant applied for search warrants for the residences located at 2809 N. 86th Street and 3456A N. 15th Street. The Honorable Patricia J. Gorence, United States Magistrate Judge for the Eastern District of Wisconsin issued the requested warrants on that same day.

43. On August 3, 2011, case agents executed a federal search warrant at 2809 N. 86th Street at approximately 6:00 a.m. Located within the premises were Deandre O. HARSCH and Dalisha Walker. The following items of note were located and seized by case agents:

- Approximately $16,000 U.S. currency from behind the television in the living room and from a hallway closet. The money was bundled;

- Numerous money orders and cashier's checks, and receipts of such, throughout the residence, most of which were drawn from an account in HARSCH's name at TCF Bank. One of the cashier check receipts located in the office area of the residence was for May/June rent of $150 at Green Acres Self Storage, Unit A33, in the name of Deandre HARSCH;

17

- Numerous financial and travel documents in HARSCH's name and using the 2809 N. 86th Street and 2355 N. 15th Street addresses;

- A Smith and Wesson .9 mm, semi-automatic firearm, loaded with one bullet in the chamber and several bullets in the 15 round capacity magazine, bearing serial number DTT1248. This firearm was located in the master bedroom in plain view on the floor next to the bed. Numerous clothing and accessory items belonging to HARSCH and Walker were found within this room;

- An unloaded Regent Firearms, eight-shot, .22 caliber revolver from a kitchen drawer and two .22 caliber rounds on the kitchen table;

- A black 2007 Chevrolet Tahoe parked at the residence. As indicated above, WDOT records indicate the vehicle is listed in HARSCH's name at 3456A N. 15th Street. Case agents seized the vehicle as the investigation to date revealed that HARSCH has used the vehicle to facilitate drug trafficking crimes. A search of the vehicle revealed a clear plastic baggie in the front driver's area containing approximately 1/8 of an ounce of an off-white, chunky substance that appeared to be cocaine base in the form of "crack cocaine." Based on my training and experience, and the investigation to date, your affiant believes the above amount of crack cocaine represents a distribution quantity of crack cocaine. Case agents also recovered a receipt for an oil change on the vehicle dated July 22, 2011 in the name of Deandre HARSCH. The receipt lists HARSCH's residence as 2355 N. 15th Street. Case agents also recovered documents that indicate HARSCH was in the process of obtaining a U.S. Passport; and

- A silver 2002 BMW X5 parked at the residence. WDOT records indicate this vehicle is registered to Redeysa Brown. As indicated in ¶ 23 above, this vehicle, and several others, was registered by Brown for HARSCH.

44. During a non-custodial interview of Dalisha Walker, Walker told case agents that she was Deandre HARSCH's girlfriend, and has been so for several years. Walker stated that she and HARSCH live together at 2809 N. 86th Street, and have been there since 2009. Walker said she used to work as a cashier at Wal-Mart until about a year ago. HARSCH has been supporting her since that time. Walker stated that she and HARSCH pay all their bills, including $1,100 per month in rent, by using money orders and cashier's checks. Walker said she gets cash from HARSCH to pay the bills. Walker stated that HARSCH works as a cashier at Quick Stop Foods, a small neighborhood market on W. North Avenue in Milwaukee. Walker told case

18

agents that she drives the silver BMW and that the vehicle belongs to a friend, Redeysa Brown, who has been out of town for over one year. Regarding the .9 mm firearm seized from the floor next to the bed, Walker stated that the gun is hers, that she bought the gun from Gander Mountain, and learned to shoot it at Badger Guns. Walker identified her clothing and belongings in the master bedroom, as well as HARSCH's. She also stated that HARSCH sleeps on the side of the bed that the gun was found on the floor. Case agents note that the gun was found at "the ready" on top of HARSCH's sandals and next to his previously identified cellular telephones. As to the .22 caliber revolver and the two .22 caliber rounds seized, Walker stated HARSCH showed her the rounds on the kitchen table, but she knew nothing of the revolver in the kitchen drawer. In a *Mirandized* statement, Walker stated HARSCH had a revolver in the console of his black Tahoe sometime in 2011 and told her not to touch the gun.

45. During a post-arrest, *Mirandized* statement to case agents, Deandre O. HARSCH stated he knew the 9 mm gun was in the bedroom, but stated it was not his gun. HARSCH told case agents that the money could be found behind the television and in the closet. HARSCH also stated that he resides at 2355 N. 15th Street and rents from a lady named Sharon Parker. HARSCH stated he spends more time at 2355 N. 15th Street than he does at 2809 N. 86th Street. Case agents note that during the debriefing of Redeysa Brown, Brown stated that she often observed HARSCH at 2355 N. 15th Street, which was located near a residence associated with one of Brown's relatives.

46. On August 3, 2011, case agents served a grand jury subpoena on the owner of Green Acres Mini Warehousing, a.k.a. Green Acres Self Storage, W196 N7580 Becker Road, Lannon, WI to obtain records regarding Unit A33 and/or Deandre O. HARSCH. The owner of the business verified that HARSCH has been renting Unit A33 since 2004. HARSCH pays $75

per month for the unit and usually pays the rent with a cashier's check in HARSCH's name. The owner identified HARSCH from a photograph. The owner stated that at the time of the initial rental agreement in 2004, HARSCH gave the address of 2355 N. 15th Street as HARSCH's address. The owner also stated that s/he was recently contacted by the local police who informed the owner that an individual drove an older model purple and green vehicle into the facility late at night. The owner recognized the description of the vehicle as one s/he has seen HARSCH park in Unit A33. As indicated in ¶ 20 above, Redeysa Brown described a similar vehicle as belonging to HARSCH.

47. As indicated in ¶ 17 above, Brown provided case agents with a telephone number used by HARSCH to facilitate his drug trafficking activities. This number is subscribed to HARSCH at 2355 N. 15th Street.

48. On August 3, 2011, case agents also executed a federal search warrant at 3456A N. 15th Street at approximately 6:00 a.m. Located within the premises were Tiffany Johnson and Calvin Hayes, both of whom were detained. Case agents retrieved a bag of cocaine from the toilet weighing approximately 3 ounces of cocaine. Hayes was then arrested. Case agents also located and seized approximately $2,500 U.S. currency. Court records indicate Hayes was convicted of possession with the intent to distribute 50 grams of more of cocaine base in the form of "crack" cocaine in federal court on November 2, 2007, under case number 06-CR-107. Hayes was sentenced 48 months incarceration.

49. During a post-arrest, *Mirandized* statement to case agents, Calvin Hayes stated he began dating Tiffany Johnson in early 2011. Hayes stated that about three months ago his regular cocaine supplier could not come through for Hayes. Johnson overheard the telephone conversation between Hayes and his supplier. After the call, Johnson said she would introduce

20

Hayes to her "guy," who ended up being HARSCH. Hayes identified HARSCH from a photograph. Hayes and HARSCH were surprised when they met because they knew each other from time they served together in juvenile detention years ago. Hayes then began buying 63 grams (2 ¼ ounces) of cocaine at a time from HARSCH through Johnson. Hayes did not have HARSCH's number. In order to get cocaine from HARSCH, Hayes had to call Johnson, who would then make arrangement with HARSCH. Hayes would then meet HARSCH at 3456A N. 15th Street to get the cocaine and then to meet later to pay for the cocaine. Hayes paid HARSCH $2,500 for 63 grams of cocaine. Hayes claimed that Johnson was present at some of the meetings between him and HARSCH and was aware that he and HARSCH were cocaine dealers. Hayes claimed to have conducted 5-6 transactions with HARSCH and Johnson in this fashion for the last couple of months.

50. As to the cocaine seized from the toilet at 3456A N. 15th Street, Hayes stated that last night (August 2, 2011) while Johnson was taking a bath, Hayes looked into her underwear drawer and observed the cocaine in a bag. Hayes claimed that although he had not called nor asked for another order from HARSCH through Johnson, he assumed the cocaine was there to distribute to him. Early this morning, while still in bed, he heard a dog barking and Johnson yelling that the police were approaching the residence. Hayes got out of bed, retrieved the bag of cocaine, flushed it down the toilet, and got back in bed. Once the police were inside the residence, Hayes feigned having to use the bathroom in order to determine if the cocaine had flushed. It had not, and the police then arrested him and seized the cocaine. Hayes also stated that the cash seized from 3456A N. 15th Street was money he made from drug sales.

During a post-arrest, *Mirandized* statement to case agents, Tiffany Johnson stated she lived at 3456A N. 15th Street alone. She denied any knowledge of cocaine in her residence or that Hayes

21

and HARSCH were involved in drug trafficking activities. She told case agents that she met HARSCH in 1997 through the father of her child, Mike Yarbrough. Johnson said Yarborough lives at 2355 N. 15th Street. Case agents note dozens of contacts between telephones associated with HARSCH and telephones associated with Johnson over the past several months.

## V. CONCLUSION

51. Based on the facts contained within this affidavit, I believe there is probable cause to believe that Deandre O. HARSCH has committed a violation of Title 21, United States Code, §§841(a)(1) and 841(b)(1)(A) (possession with the intent to distribute in excess of 5 kilograms of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance) and §846 (conspiracy) and probable cause to believe that located within the above-described locations associated with Deandre O. HARSCH and others, there is evidence, as detailed in Attachment A (Items to be Seized), of violations of Title 21, United States Code, §841(a)(1) (possession with the intent to distribute in excess of 5 kilograms of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance), and §846 (conspiracy).